RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for Apple & Honey LLC, d/b/a HMH Iron Design, and Tzvi Hasenfeld*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Chapter 11 |
| JUAN ALFARO DESIGN INC., | Case No.: 19-42177 (CEC) |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OBJECTION OF APPLE & HONEY LLC, D/B/A HMH IRON DESIGN
AND TZVI HASENFELD TO DEBTOR'S EMERGENCY MOTION FOR AN
ORDER RESTRAINING AND ENJOINING STEVE HASENFELD AND HMH
IRON DESIGN, INC. FROM INTERFERING WITH THE PROPERTY OF THE
DEBTOR AND COMPELLING THE TURNOVER OF DEBTOR PROPERTY**

Apple & Honey LLC, d/b/a HMH Iron Design ("HMH") and Tzvi Hasenfeld ("Hasenfeld"), by their counsel Rubin LLC, hereby submit this objection (the "Objection") to the motion (the "Turnover Motion") filed by Juan Alfaro Design, Inc. (the "Debtor") for an order restraining and enjoining HMH and Hasenfeld from interfering with the property of the Debtor and compelling the turnover of such property. In support of this Objection, the HMH and Hasenfeld respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. Although the Turnover Motion does not reference section 542 of the Bankruptcy Code, the motion seeks turnover relief governed by section 542. Accordingly, the Debtor must

demonstrate, as a threshold matter, that the tools and equipment listed on Exhibit A to the Turnover Motion (the "Equipment") which the Debtor seeks to be returned, are property of the Debtor's estate. As discussed below, the Debtor's Turnover Motion completely ignores the pre-petition relationship and agreement between the Debtor and HMH/Hasenfeld, and gives the appearance that ownership of the Equipment is without dispute. This is not the case. A fair portion of the Equipment actually belongs to HMH.

2. But, out of an abundance of caution that certain of the Equipment may be property of the Debtor's estate, and in the interest of resolution of the disputes in the Turnover Motion, HMH would agree, under appropriate supervision, for the Debtor to retrieve those items set forth in Exhibit A to the Turnover Motion that are not property of HMH and Hasenfeld and that are in HMH's possession. The turnover of the Equipment is without prejudice to, or waiver of, (i) HMH's right to assert that the property belongs to Alfaro and not the Debtor, (ii) HMH's right to assert that the property was transferred to HMH pursuant to the parties' agreement, and (iii) any claims against the Debtor that could be asserted by HMH as a result of the Debtor's breach of the parties' agreement.

3. Inasmuch as the Turnover Motion seeks sanctions against HMH and Hasenfeld, however, the Debtors have provided no basis for such measures. Indeed, the Debtor's own involvement (through Alfaro) in the theft of HMH's tools and equipment raises serious issues about the credibility and honesty of this Debtor. This act of theft over the past Memorial Day weekend was captured on security camera footage and has been reported to the police. Under these circumstances, the reluctance of HMH and Hasenfeld to allow the Debtor and Alfaro access to HMH's premises is understandable. As stated above, however, notwithstanding these serious criminal issues, HMH and Hasenfeld are willing to cooperate with the turnover of that portion of

the Equipment for which the Debtor can demonstrate ownership. In particular, and in response to a secured creditor's concerns with respect to that certain 2016 OMAX 80X Waterjet JetMachining Center (the "OMAX Waterjet"), HMH and Hasenfeld will cooperate to ensure the proper disposition of the OMAX Waterjet as may be ordered by this Court.

**RELEVANT BACKGROUND**

4. The relevant facts are set forth in the Declaration of Tzvi Hasenfeld (the "Hasenfeld Decl."), annexed hereto as Exhibit A.

5. The Debtor is a metalworks design and fabrication firm. On April 10, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. Hasenfeld is an owner and managing partner of HMH. *See* Hasenfeld Decl. ¶ 1. Similar to the Debtor, HMH is a design-and-build metal fabrication firm. *See id.* at ¶ 2. HMH is located at 53 9th Street, Suites 37B, 37C, and 37D in Brooklyn, New York. *Id*. HMH has operated from its workshop in unit 37B for eight years. *Id*.. Unit 37D was leased to Serett Metalworks, a custom metal fabrication shop, until HMH took over the lease in January 2019. *Id*. Unit 37D has a separate tool room that can be locked to secure tools and equipment. Unit 37C is currently unoccupied as ongoing repairs are being completed. *Id*.

7. In February 2019, prior to the Petition Date, Hasenfeld and Alfaro discussed the terms of an agreement for HMH to acquire the Debtor's assets and for the businesses to collaborate on pending and future projects. *Id.* at ¶ 3. As part of the asset sale, HMH would employ Alfaro at an annual salary of $250,000. *Id*. On February 17, 2019, Alfaro commenced his employment with HMH and received weekly paychecks from HMH each in the amount of approximately $4,800.00. HMH also formally employed the Debtor's employees. *Id*. Beginning in February

2019, Alfaro commenced moving the Debtor's operations to unit 37B at HMH's location at 53 9th Street. *Id*.

8. Hasenfeld had a similar arrangement with Joshua Young, the owner of Serett Metalworks. *Id*. at ¶ 4. In January 2019, HMH took over the lease of unit 37D, and in February 2019, moved a significant number of tools and equipment to unit 37D to accommodate the larger-scale operations. *Id*. HMH had increased from 15 employees to over 40 employees in a very short period of time, and needed to work from both the unit 37B and unit 37D workshops. *Id*.

9. At some point after the parties agreed to the sale of assets to HMH, Hasenfeld learned that Alfaro and Young were not complying with the terms of their agreement. *Id*. at ¶ 5. For example, even though they were employees of HMH, Alfaro and Young were soliciting and entering into new job contracts under their existing entities; Alfaro and Young were not managing the existing jobs that needed to be completed; and Alfaro and Young were not bringing in the new business they had promised. *Id*.

10. Thereafter, on May 26, 2019, a HMH employee alerted Hasenfeld (who was traveling abroad) about troubling events that had transpired over the Memorial Day weekend. *Id*. at ¶ 6. Hasenfeld was informed that Young and Alfaro had been holding a number of private meetings and had requested that HMH's shop foreman provide them a key to the unit 37D tool room, which the shop foreman refused to provide. *Id*. Over the Memorial Day weekend, when the businesses were closed for the holiday, Alfaro and Young entered the HMH premises with the knowledge that no employees would be present and that Hasenfeld was traveling abroad at the time, and they removed significant number of the tools and equipment from unit 37D. *Id*. Specifically, security camera footage shows Alfaro with his truck, along with Young and several other individuals in a van owned by New York Wood Stairs, entering and leaving the HMH

4

premises throughout the day of May 25th, with items loaded into the truck, as well as a trailer, on successive trips. *Id*. The same individuals, including Alfaro and Young, are seen on the security camera footage the following day, May 26th, continuing to make successive trips to the HMH premises and loading items into their vehicles. *Id*.

11. On Sunday evening, an HMH employee arrived on the premises to discover that the unit 37D tool room had been forcibly broken into and emptied of its contents. *Id*. at ¶ 7. When Hasenfeld learned of these facts on May 26th, he terminated Alfaro and Young's employment. *Id*. Hasenfeld reported the theft to the police and has been cooperating with the authorities in their investigation. *Id*.

12. On June 6, 2019, the Debtor filed the Turnover Motion. The next day, the Debtor filed a letter withdrawing the Turnover Motion. *See* ECF No. 45.

13. On June 7, 2019, the Court entered an order scheduling a hearing on the Turnover Motion. *See* ECF No. 46.

14. On June 10, 2019, counsel for TCF Equipment Finance ("TCF"), a secured creditor with respect to the OMAX Waterjet, filed a response to the Turnover Motion to protect TCF's interests in the OMAX Waterjet. *See Affirmation of Counsel* [EFC No. 49]. Upon being retained by Hasenfeld and HMH, the undersigned counsel contacted counsel for TCF on June 13, 2019, to advise her that the OMAX Waterjet was secured in HMH's workshop and had not been removed.

## ARGUMENT

**A. The Debtor Is Not Entitled To Turnover Of Property That It Has Failed To Demonstrate Is Property Of The Estate Or That Is Not In The Possession Of Hasenfeld Or HMH**

15. "In a motion for turnover under § 542, the burden of proof is at all times on the party seeking turnover and that party must establish a prima facie case." *In re Vasquez*, 581 B.R. 59, 66 (Bankr. D. Ver. 2018) (quotations, citation, and alterations omitted) (quoting *In re Weiss-*

5

*Wolf, Inc.*, 60 B.R. 969, (Bankr. S.D.N.Y. 1986)). "[T]he trustee has the burden of proof, by a preponderance of the evidence, to establish that … the property constitutes property of the estate." COLLIER ON BANKRUPTCY ¶ 542.03.

16. To the extent that the Debtor cannot satisfy its burden of proof to demonstrate that the Equipment is property of the estate, the Debtor is not entitled to turnover of such property. Hasenfeld has reviewed the list of Equipment annexed to the Turnover Motion and has determined which items are property that Hasenfeld and/or HMH have always owned, acquired over the 12 years that HMH has been in business, well before HMH became involved with the Debtor. Other items simply are not in the possession of HMH or Hasenfeld (either because those items were already moved or because they were erroneously listed on the exhibit) and so HMH and Hasenfeld cannot turnover such items. The list of Equipment as annotated by Hasenfeld is annexed as <u>Exhibit B</u> hereto.

17. For those items that HMH agrees to turnover to the Debtor, HMH and Hasenfeld will agree to permit the Debtor access to the premises, under appropriate supervision, solely to retrieve those items, including specifically the OMAX Waterjet.

**B.    Damages Are Not Available To A Corporate Debtor Under Section 362(k) Of The Bankruptcy Code, And HMH/Hasenfeld Should Not Be Held In Contempt Because The Debtor Has Not Demonstrated HMH/Hasenfeld's Maliciousness Or Lack Of A Good Faith Argument And Belief**

18. "While an individual debtor may seek actual and punitive damages for a creditor's violation of the automatic stay pursuant to § 362(k), relief for damages to a corporate debtor resulting from violation of the automatic stay lies with the court's contempt power and § 105. To hold a party in contempt for violation of the automatic stay, the court must find maliciousness or lack of a good faith argument and belief that the party's actions were not in violation of a

bankruptcy stay." *In re Am. Med. Utilization Mgmt. Corp.*, 494 B.R. 626, 635 (Bankr. E.D.N.Y. 2013) (citations and quotation omitted).

19. The Debtor here is not an individual, and thus damages under section 362(k) of the Bankruptcy Code are not available. Nor are sanctions pursuant to section 105 of the Bankruptcy Code and the Court's general contempt power appropriate in this case where the Debtor has not even attempted to demonstrate maliciousness or lack of good faith on HMH/Hasenfeld's part.

20. As described above, HMH has operated from unit 37B for eight years, and through those years, it has accumulated numerous tools and equipment. The Debtor moved its operations, including its tools and equipment, into unit 37B as part of the parties' agreement for HMH to purchase the Debtor's assets. HMH and Hasenfeld therefore have a good faith basis to believe that the Equipment is property of HMH and not the Debtor. Certainly, the equipment already present at unit 37B prior to HMH and Hasenfeld's involvement with the Debtor are clearly not property of the Debtor's estate, and yet the Debtor includes these items in its list of Equipment to be turned over.

21. Moreover, any refusal to cooperate with the Debtor on the return of the Equipment is understandable in light of the theft committed by Alfaro and Young. The Debtor (through Alfaro) participated in stealing HMH's property, and now has the audacity to complain that HMH will not permit the Debtor to have access to HMH's premises. Indeed, it is telling that the Debtor's proposed order annexed to the Turnover Motion does not even seek damages or sanctions; such remedies are clearly not warranted in this case.

WHEREFORE, the HMH and Hasenfeld respectfully request that this Court deny the Turnover Motion to the extent that it seeks the turnover of property that is not property of the Debtor's estate or that is not in the possession of HMH or Hasenfeld, deny the Debtor's request

for damages or sanctions, and grant HMH and Hasenfeld such other relief as may be just and proper.

Dated: New York, New York
June 17, 2019

>RUBIN LLC
>
>By:    */s/ Paul A. Rubin*
>      Paul A. Rubin
>      Hanh V. Huynh
>
>345 Seventh Avenue, 21st Floor
>New York, New York 10001
>Tel: 212.390.8054
>prubin@rubinlawllc.com
>hhuynh@rubinlawllc.com

# EXHIBIT A
# (HASENFELD AFFIDAVIT)

```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :
In re:                                             :    Chapter 11
                                                   :
JUAN ALFARO DESIGN INC.,                           :    Case No.: 19-42177 (CEC)
                                                   :
              Debtor.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## DECLARATION OF TZVI HASENFELD IN
## OPPOSITION TO DEBTOR'S TURNOVER MOTION

TZVI HASENFELD, pursuant to 28 U.S.C. § 1746, affirms as follows:

1. I am an owner and managing partner of Apple & Honey LLC, d/b/a HMH Iron Design ("HMH"). I make this declaration in support of the objection (the "Objection") to the motion (the "Turnover Motion") filed by Juan Alfaro Design, Inc. (the "Debtor") for an order restraining and enjoining HMH and me from interfering with the property of the Debtor and compelling the turnover of such property. I am fully familiar with the facts set forth herein.

2. HMH is a design-and-build metal fabrication firm. HMH is located at 53 9th Street, Suites 37B, 37C, and 37D in Brooklyn, New York. HMH has operated from its workshop in unit 37B for eight years. Unit 37D was leased to Serett Metalworks, a custom metal fabrication shop, until HMH took over the lease in January 2019. Unit 37D has a separate tool room that can be locked to secure tools and equipment. Unit 37C is currently unoccupied as ongoing repairs are being completed.

3. In February 2019, prior to the Petition Date, Juan Alfaro (the principal of the Debtor) and I discussed the terms of an agreement for HMH to acquire the Debtor's assets and for the businesses to collaborate on pending and future projects. As part of the asset sale, HMH would employ Alfaro at an annual salary of $250,000. On February 17, 2019, Alfaro commenced his employment with HMH and received weekly paychecks from HMH each in the amount of

approximately $4,800.00. HMH also formally employed the Debtor's employees. Beginning in February 2019, Alfaro commenced moving the Debtor's operations to unit 37B at HMH's location at 53 9th Street.

4. I had a similar arrangement with Joshua Young, the owner of Serett Metalworks. In January 2019, HMH took over the lease of unit 37D, and in February 2019, moved a significant number of tools and equipment to unit 37D to accommodate the larger-scale operations. HMH had increased from 15 employees to over 40 employees in a very short period of time, and needed to work from both the unit 37B and unit 37D workshops.

5. At some point after the parties agreed to the sale of assets to HMH, I learned that Alfaro and Young were not complying with the terms of their agreement. For example, even though they were employees of HMH, Alfaro and Young were soliciting and entering into new job contracts under their existing entities; Alfaro and Young were not managing the existing jobs that needed to be completed; and Alfaro and Young were not bringing in the new business they had promised.

6. Thereafter, on May 26, 2019, a HMH employee alerted me (while I was traveling abroad) about troubling events that had transpired over the Memorial Day weekend. I was informed that Young and Alfaro had been holding a number of private meetings and had requested that HMH's shop foreman provide them a key to the unit 37D tool room, which the shop foreman refused to provide. Over the Memorial Day weekend, when the businesses were closed for the holiday, Alfaro and Young entered the HMH premises with the knowledge that no employees would be present and that I was traveling abroad, and they removed a significant number of the tools and equipment from unit 37D. Specifically, security camera footage shows Alfaro with his truck, along with Young and several other individuals in a van owned by New York Wood Stairs,

entering and leaving the HMH premises throughout the day of May 25th, with items loaded into the truck, as well as a trailer, on successive trips. The same individuals, including Alfaro and Young, are seen on the security camera footage the following day, May 26th, continuing to make successive trips to the HMH premises and loading items into their vehicles.

7. I was informed by the HMH employee that, on Sunday evening, he arrived on the premises to discover that the unit 37D tool room had been forcibly broken into and emptied of its contents. When I learned of these facts on May 26th, I terminated Alfaro and Young's employment. I reported the theft to the police and have been cooperating with the authorities in their investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Brooklyn, New York
June 17, 2019

_____
Tzvi Hasenfeld

**EXHIBIT B**
**(ANNOTATED EQUIPMENT LIST)**

| # | Item | Status |
|---|------|--------|
| 1 | Omax 5 axis waterjet 6'xl2' cutting bed | Agree to return - acknowledge what is clearly JAD |
| 2 | FMB semi automatic Band saw | Agree to return - acknowledge what is clearly JAD |
| 3 | Stronghand Precision welding tables | Agree to return those shown to belong to JAD |
| 4 | Stonghand Specialty clamps | Agree to return those shown to belong to JAD |
| 5 | Stonghand fixturing blocks | Agree to return those shown to belong to JAD |
| 6 | Stronghand fixture pins | Agree to return those shown to belong to JAD |
| 7 | DeWalt yellow tool cabinets | Agree to return - acknowledge what is clearly JAD |
| 8 | Miller Tig Dynasty Welding machines | Agree to return 2 machines - Possibly have in possession will need a clear way to identify what is JADS |
| 9 | Millennatic Mig Welding machines | Agree to return those shown to belong to JAD - I believe he took the machines on 25th and 26th |
| 10 | All welding consumables | Not in HMH Possession - I believe he took them on 25th and 26th |
| 11 | Welding rod, steel, stainless, brass | Not in HMH Possession - I believe he took them on 25th and 26th |
| 12 | Makita Hand Drills | Not in HMH Possession - I believe he took them on 25th and 26th |
| 13 | Metabo grinders | Not in HMH Possession - I believe he took them on 25th and 26th |
| 14 | Welding Helmets | Not in HMH Possession - I believe he took them on 25th and 26th |
| 15 | Bosh Hammer Drills | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 16 | Welding gas tanks, Argon, Argon C02 mix, ox acetylene | Agree to return those inscribed with JAD mark |
| 17 | Oxy Acetylene torches | Not in HMH Possession - I believe he took them on 25th and 26th |
| 18 | Baldor buffing machines | Agree to return - acknowledge what is clearly JAD - 1 broken - 1 seems working |
| 19 | Portable buffing machines | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 20 | Air hoses | Not in HMH Possession - I believe he took them on 25th and 26th |
| 21 | Air tools and air grinders | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 22 | Tapping tools | Not in HMH Possession - I believe he took them on 25th and 26th |
| 23 | Drill bits and taps | Not in HMH Possession - I believe he took them on 25th and 26th |
| 24 | Buffing wheels, cloth | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 25 | Precision measuring tools, tapes, rulers, lasers | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 26 | Rouge | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 27 | Metal Tool Cabinets | we have many Cabinets - not sure he brought any - if yes I believe he took them on 25th and 26th |

| # | Item | Status |
|---|---|---|
| 28 | Drill presses | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 29 | iMac 27" | Not in HMH Possession |
| 30 | I pad Pro large | Not in HMH Possession |
| 31 | Keyboard and mouse | Agree to return those shown to belong to JAD |
| 32 | Samples box | Agree to return - there is a single sample box |
| 33 | Legal JAD documents | Not in HMH Possession |
| 34 | Office Chairs | Agree to return those shown to belong to JAD |
| 35 | 2 tower PC's, gaming/drafting large memory | Agree to return one computer, not in possession of other |
| 36 | 1 PC laptop computer, large memory | Not in HMH Possession |
| 37 | Makita impact drills | Not in HMH Possession - I believe he took them on 25th and 26th |
| 38 | A-frame material racks | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 39 | Grizzly Stroke Sander | Agree to return - need Serial Number as I have one that is identical |
| 40 | Grizzly vertical Bandsaw | Agree to return - not sure if it was already taken |
| 41 | Shelf Bin Organizer yellow bins | Agree to return 2 bins shown to belong to JAD - HMH has numerous bins |
| 42 | Industrial Metal Storage Cabinets | we have many Cabinets - not sure he brought any - if yes I believe he took them on 25th and 26th |
| 43 | Uline Yellow Crowd Control Barrier posts | Not in HMH Possession - I believe he took them on 25th and 26th |
| 44 | Heavy Duty Steel Dollies | Not in HMH Possession - I believe he took them on 25th and 26th |
| 45 | Job boxes | Agree to return green cabinet shown to belong to JAD |
| 46 | Filing cabinets | Not in HMH Possession |
| 47 | Refrigerator | Agree to return - acknowledge what is clearly JAD |
| 48 | Microwave | Agree to return - acknowledge what is clearly JAD |
| 49 | Sawhorses | Not in HMH Possession - I believe he took them on 25th and 26th |
| 50 | F clamps, Small, medium and large | Not in HMH Possession - I believe he took them on 25th and 26th |
| 51 | C clamps, small, medium and large | Not in HMH Possession - I believe he took them on 25th and 26th |
| 52 | Pipe clamps | Not in HMH Possession - I believe he took them on 25th and 26th |
| 53 | Patina acid, steel, stainless, brass | Agree to return those shown to belong to JAD - I believe he took them on 25th and 26th |
| 54 | Cleaning products | Not in HMH Possession |
| 55 | Sanding pads | Not in HMH Possession - I believe he took them on 25th and 26th |
| 56 | Ratchet straps and rigging gear | Not in HMH Possession - I believe he took them on 25th and 26th |
| 57 | Chain hoists | Not in HMH Possession / Agree to return those shown to belong to JAD |
| 58 | Yellow forklift boom crane | Agree to return - acknowledge what is clearly JAD |

| # | Item | Status |
|---|---|---|
| 59 | Yellow forklift extensions | Agree to return (possible duplicate of above item) same as Yellow forklift boom crane |
| 60 | Tonneau cover for 2018 Toyota Tundra | Not in HMH Possession |
| 61 | Extensions Cords regular | Not in HMH Possession |
| 62 | 220V extension cords for welding machines | Not in HMH Possession |
| 63 | DeWalt Sawsall | Not in HMH Possession - I believe he took them on 25th and 26th |
| 65 | Personal protection equipment/masks | Not in HMH Possession / Agree to return those shown to belong to JAD |
| 66 | Paint Sprayers | Not in HMH Possession |
| 67 | Fume masks | Not in HMH Possession |
| 68 | Everlast portable welder | Agree to return - need Serial Number as I have 3 that are identical |
| 69 | Everlast Water cooled tig welder | Agree to return - need Serial Number as I have 3 that are identical |
| 70 | Welding table waterjet cut chills, aluminwn | Not sure what he is referring to |